# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HUBBARD,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>PHIL'S BBQ OF POINT LOMA, INC., a California corporation; PHILLIP C. PACE and JEFFREY A. LOYA,<br><br>　　　　　　Defendants. | CASE NO. 09CV0735-LAB (CAB)<br><br>**ORDER DENYING MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND FOR STAY OF PROCEEDINGS OR, IN THE ALTERNATIVE, FOR RECONSIDERATION** |

　　　　The Defendant corporation, Phil's BBQ of Point Loma, Inc. ("New Phil's") is the subject of proceedings under California Corporations Code § 2000. Two of its owners, Defendants Pace and Loya, are also the sole owners and officers of Phil's BBQ, Inc. ("Old Phil's"), which operated a different barbeque restaurant until December 2006.

　　　　In preparation for an evidentiary valuation hearing currently on calendar for Thursday, September 16, the Court made certain rulings concerning the valuation of New Phil's. The order directed the appraisers to assume New Phil's would be permitted, going forward, to use certain intellectual and tangible property on the same terms as it was currently using them, so as to permit the corporation to be sold as a going concern rather than piecemeal. The order also found as a matter of law Plaintiff owned a 10% interest in New Phil's.

Defendants, dissatisfied with this order, have moved for an order certifying three issues for interlocutory appeal and seeking a stay. In the alternative, they have filed an *ex parte* motion for leave to seek reconsideration of virtually all the Court's rulings. The Court finds it appropriate to deny these requests summarily without requiring an opposition.

**I.   Interlocutory Appeal**

Defendants ask the Court to certify three issues for appeal pursuant to 28 U.S.C. § 1292:

1. Whether the fact that New Phil's does not own or have a written license to use the intellectual property would prevent it from being sold as a going concern;

2. Whether appraisers in a § 2000 valuation proceeding "are entitled to make assumptions about what reasonable shareholders would do to maximize the liquidation value for the defendant corporation while acting in their capacity as officers/directors/fiduciaries of "Old Phil's"; and

3. Whether California law permits the appraisers to make any assumption about how shareholders would behave, considering Pace's and Loya's fiduciary duties to Old Phil's.

Certification of issues for appeal under § 1292(b) is granted only sparingly. *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D.Cal., 2008). There is no reason to do so here. First, the issues are poorly framed. The first issue does not present a meaningful question because it is undisputed New Phil's had a valid unwritten license to use the intellectual property at issue. The second issue does not adequately reflect the questions presented here; even if the Ninth Circuit were to address it, the answers would have no direct bearing on this Court's ruling. The third issue is subsumed within the second.

Furthermore, an interlocutory appeal would be of little assistance. The issues presented here are questions of California state law, and the parties agree only five published decisions have addressed the application of California Corporations Code § 2000 in a similar context. The California Supreme Court has not ruled on the precise issues

/ / /

concerning valuation presented here. The Ninth Circuit would have no more or better information than this Court does. Finally, the interlocutory appeal would occasion needless delay and would result in piecemeal litigation of the issues.

**II.     Reconsideration**

While the Court recognizes its own authority to reconsider its rulings at any time before a final judgment has been entered, *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000), motions for reconsideration are disfavored and appropriate only if the Court is presented with newly discovered evidence or a change in controlling law, or has committed clear error. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Defendants argue that virtually the entire order was clearly erroneous, and ask that errors be corrected

The Court considered all the pleadings in Plaintiff's motion for partial summary judgment, as well as the applicable authority, and finds no reason for a wholesale re-examination of its decision. Nevertheless, because it is clear Defendants substantially misunderstand the order, the Court finds it appropriate to clarify several points Defendants have raised.

**A.     Dealings Between Corporate Entities**

Defendants identify a large number of what they call "inconsistencies" in the Court's order, but these appear to be misreadings of the Court's order, misunderstandings of the law, or simple disagreements with the Court's rulings.

Defendants Pace and Loya together own Old Phil's. Together with Hubbard, they also own New Phil's. Old Phil's has not operated a restaurant since December 2006, and New Phil's is a successful restaurant currently in business. No evidence was presented to show Old Phil's and New Phil's owed each other any duty, nor are they related, except by partial overlap in ownership.

Until now, Old Phil's has allowed New Phil's to use its intellectual and tangible property freely without requiring any payments even though, from the point of view of each corporation, Old Phil's and New Phil's are competitors. One way to analyze this would be to say that Pace and Loya are disregarding Old Phil's corporate existence by plundering its

assets, and using them as their own, to benefit themselves and not the corporation to which they owe fiduciary duty. However, as the Court observed in its July 13 order, no party has argued this; therefore, under the business judgment rule, the Court presumes Old Phil's has legitimate reasons for lending out its equipment, vehicles, and other tangible property, and for allowing New Phil's to use its trademarked names and have access to its secret recipes.

The parties agree New Phil's is not a thief or infringer, but has a license to use the intellectual and tangible property. The question is, whether the appraisers in valuing New Phil's should consider this license to be among New Phil's assets. If this license is included in New Phil's assets, New Phil's could be valued as a going concern rather than valued as if it were going to be sold piecemeal. New Phil's value would likely be higher if valued as a going concern.

Two of the five cited California decisions, *Abrams v. Abrams-Rubaloff & Assocs.*, 114 Cal. App. 3d 240 (Cal. App. 2 Dist. 1980) and *Mart v. Severson*, 95 Cal. App. 4th 521 (Cal. App. 1 Dist. 2002) apply § 2000 in a similar context. Those two decisions particularly note that § 2000 requires appraisers to consider the possibility that a business might be able to be sold as a going concern. This is part of the plain language of § 2000.

The hypothetical sale model is one method of calculating the fair value of a corporation, *Mart* at 531–32, and the appraisers are permitted to use it. Both cases <u>require</u> the appraisers "to consider the manner in which the parties to such a hypothetical sale are most likely to maximize their return." *Abrams* at 249, *Mart* at 532.

Both cases dealt with sales in which the value of the business would be enhanced if the hypothetical sellers agreed to enter into covenants not to compete with it. Obviously, a covenant not to compete costs the covenanter something, but the *Abrams* court held the appraisers properly assumed a hypothetical seller would enter into such a covenant in order to maximize the selling price. *Abrams* at 249. *Mart* similarly found the appraisers properly assumed not only shareholders but also key employees would execute hypothetical covenants to compete. *Mart* at 531. *Mart* noted that the appraisers properly did not consider what the actual sellers would do. *Id.*

1  *Mart* also discussed *Brown v. Allied Corrugated Box. Co.* 91 Cal. App. 3d 477 (Cal. App. 2 Dist. 1979), which dealt with a predecessor statute. *Mart* at 532. *Mart*'s construction of *Brown* noted that discounting the value of the corporation because of the threat of competition by a shareholder unfairly deprives a movant of the true value of his stock. *Mart* at 532. The situation here is analogous. Pace and Loya own Old Phil's outright and in an actual sale they could obviously drive down the price of New Phil's by canceling the license. The question is not, however, what Pace and Loya would do, but what hypothetical willing sellers would do in order to maximize the return. And, as *Mart* explains, appraisers' assumptions should not be limited to covenants not to compete: appraisers should also "assume that the parties to the hypothetical sale will negotiate the other requisite terms to a sales agreement." *Id.* at 534.

Neither *Abrams* nor *Mart* asked what the covenant not to compete would cost the sellers or other covenanting parties in the long term, or whether it would be in their overall interest, nor did they consider such issues at all. Defendants would have the Court examine the interests of the actual sellers, and adjust the return from the hypothetical sale to account for the effect on their finances if New Phil's were owned by someone else. This is what both *Abrams* and *Mart* said appraisers should <u>not</u> do when using the hypothetical sale method of valuation.

Old Phil's actions in granting the license show two things are beyond dispute. First, such a license is feasible. Old Phil's is not using the tangible property and no evidence shows this is about to change. And Old Phil's has found ways to license its intellectual property without fear of losing it. Second, Old Phil's is willing to license its property royalty-free to a competitor.

Although the Court did not rely on this evidence, Defendants also filed declarations stating that they are negotiating a new location for another Phil's BBQ restaurant, and Old Phil's is willing to license its intellectual property royalty-free to that restaurant as well. (Pace Decl. in Supp. of Opp'n to Mot. for Partial Summ. J. ("Pace Decl."), ¶ 46, Loya Decl. in Supp. of Opp'n to Mot. for Partial Summ. J. ("Loya Decl."), ¶ 43.) Defendants agree the licenses

for both New Phil's and the contemplated new restaurant would be royalty-free for an indefinite period, to be renegotiated later when each new restaurant was well-established. The time for renegotiation was undetermined, and no renegotiation of New Phil's license was expected soon. (Pace Decl., ¶ 43; Loya Decl., ¶ 40 (discussing compensation to Old Phil's "at some point in the future").)

Defendants' motion relies on Pace's and Loya's alleged fiduciary duty not to allow Old Phil's to grant royalty-free licenses of its property. Apparently they are arguing that allowing a competing business to use Old Phil's property is a violation of their duties of loyalty and care to Old Phil's. Defendants' motion argues this fiduciary duty would require hypothetical sellers to cancel the license. This argument collapses under its own weight. If Pace and Loya owe a fiduciary duty, it is to Old Phil's, not to themselves. In other words, they must act to benefit Old Phil's, regardless of whether it helps or hurts them personally. And if the royalty-free licensing of Old Phil's intellectual property is not in Old Phil's best interest (even if it is in Pace's and Loya's), they have been violating their duty for several years and are planning to continue violating it.

Defendants attempt to get around this problem by distinguishing between "related party" transactions and arm's-length transactions (Am. Mot. at 22:5–9). But Old Phil's has no particular interest in helping New Phil's. Its owners do, to be sure, but as a corporation it does not. Treating the licensing agreement as a transaction between related parties for purposes of this case would blur the distinctions between corporations and their owners. Defendants depend heavily on these distinctions as a source of the fiduciary duties which, they argue, stand in the way of the hypothetical sale. But Defendants cannot have it both ways. Either the current licensing agreement benefits Old Phil's or it does not. If it does, it would continue after a hypothetical sale. If it does not, Pace's and Loya's fiduciary duties to Old Phil's would have required that it be canceled long before now. One way or another their arguments must fail.

Defendants also rely heavily on affidavits by Pace and Loya declaring their intent to cancel the license if New Phil's were ever sold or liquidated. (Pace Decl., ¶¶ 47, 48; Loya

Decl., ¶¶ 44, 45.) The Court cannot and does not rely on this evidence, however. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). This evidence is inadmissible, first, because it is irrelevant. The hypothetical sale method of valuation asks what hypothetical willing sellers would do to maximize their return. *Mart* at 725. What Pace and Loya say they would do is irrelevant. Second, Pace and Loya are lay witnesses offering hypothetical testimony. Their testimony about what they would do in a range of imagined situations is not based on their personal knowledge, and is therefore incompetent.

Finally, relying on declarations about the actual sellers' intent would gut the holdings of *Abrams* and *Mart*. Actual sellers could render a hypothetical sale impossible simply by filing self-serving declarations stating what they would or would not do. *See Mart* at 534–35 (noting a purchaser could always prevent a corporation from being valued as a going concern by refusing to agree to its terms).

Defendants' arguments appear to be motivated by a concern to protect the value of their intangible property. Pace and Loya are concerned that their trade secrets would leak out and their trademarked names be lost if they allowed other businesses to use them. Certainly it is easier to maintain confidentiality when only one or two people know the secret. But businesses license this type of property and protect trade secrets routinely by means of licensing and confidentiality agreements. In fact, Old Phil's has already done this, protecting its barbeque sauce recipe by outsourcing its manufacture to Kraft and binding Kraft by a confidentiality agreement. There is no reason to think this property could not continue to be licensed if New Phil's were ever sold. (*See* Am. Mot, 16:1–3 ("The use of confidentiality agreements . . . is exactly the type of reasonable measure[ ] that will protect a trade secret from loss or disclosure."))

### B.     Trade Secrets: Recipes

The trade secrets at issue consist of secret recipes Pace developed. The undisputed evidence showed that Pace and Loya used the recipes while working at New Phil's, to make food for New Phil's to sell. In so doing they were acting for New Phil's, with the consent of

Old Phil's. Old Phil's did not charge New Phil's for use of the recipes, and there was no evidence New Phil's had agreed to stop using the recipes at any point. Defendants also represented that various other employees of New Phil's had access to the recipes, and were required not to disclose them to outsiders. The Court therefore found that Old Phil's had not kept its recipes secret from New Phil's, and directed the appraisers to assume for purposes of valuing New Phil's as a going concern that New Phil's had this information and would continue to be able to use it. The Court accepted the parties' representations that the recipes remained trade secrets.

Defendants still agree with these findings and agree that New Phil's had and used the information. Yet, inexplicably, they fault the Court's finding, and argue that the recipes were kept a secret from New Phil's:

> In the Order, <u>the Court indicates Old Phil's did not take steps to protect the secrecy of its recipes from New Phil's</u>. In making this statement, the Court has either disregarded the declaration and report of defendants' expert witness John L. Haller, or has simply failed to take it into account. In his report, Mr. Haller describes the steps Old Phil's took to protect its trade secret <u>during its use at New Phil's</u> and to ensure that <u>individuals involved in the production of Phil's BBQ branded items knew that the intellectual property associated with those items was the property of Old Phil's</u>. In particular, Mr. Haller notes that the <u>employees of New Phil's</u> are each presented with an employee handbook that specifically states that the various items of intellectual property are owned by Old Phil's. The handbooks and employee instructions themselves are the property of Old Phil's. Contained within the handbook is a Confidentiality & Non-Disclosure Agreement which states that the <u>employees must keep information such as secret recipes confidential</u> for the benefit of Old Phil's.

(Am. Mot., 14:20–15:11; footnotes deleted, emphasis added.)[1]

/ / /

/ / /

/ / /

/ / /

---

[1] The agreement and employee handbook the citation refers to were not submitted as evidence; the only information about the contents of these comes from Defendants' witnesses' summaries and characterizations of them. Witnesses' testimony about the contents of writings are not generally admissible as evidence, Fed. R. Evid. 1002–4, but for purpose of this argument the Court takes note of Defendants' representations in the pleadings. No evidence suggests the agreements or employee handbook would require New Phil's to stop using the recipes at some point.

Apparently Defendants are now arguing New Phil's never had, knew, or used the recipes:

> Although not expressly articulated, this conclusion [that New Phil's knows the recipes] appears to be grounded on the assumption that since the owner's agent [Pace] used trade secret information that was/is held exclusively in his mind for the benefit of another user (either at sufferance or per agreement), that trade secret is somehow imputed to the user [New Phil's] and thereby destroys the confidentiality of the trade secret.

(*Ex Parte* App. for Reconsideration, 4:1–5 (second and third bracketed remarks in original).) This argument fails, first, because the representations it contains contradict Defendants' own newly-submitted evidence that various people had access to the trade secrets. And second, when acting over a period of several years for the benefit of New Phil's, and as an owner and officer of New Phil's, Pace was unquestionably New Phil's agent. To view him as an agent of Old Phil's (the "owner's agent") and a stranger to New Phil's the entire time is unreasonable. When Old Phil's allowed New Phil's agent to have and use the recipes, it effectively gave New Phil's those recipes.

The Court found that Old Phil's had freely shared its trade secrets with New Phil's, not with other businesses or the public generally. In some cases, Old Phil's shared its trade secrets with a third party, Kraft Foods, entering into an agreement that Kraft would keep the recipe or recipes confidential and sell the products only to authorized buyers. Old Phil's then authorized Kraft to sell the products to New Phil's. But the Court accepts that the recipes remain trade secrets and that Old Phil's has taken care to ensure that they remain so. Bearing in mind the precautions taken to prevent disclosure outside New Phil's, there is no reason to find the recipes lost their status as trade secrets as to entities altogether.

It may also be that Defendants believe "trade secret" status confers a protection like that of a patent, so that even if a competitor has the secret information, the competitor may not legally use it. California law does recognize a cause of action for misappropriation of trade secrets. *See* 61 Cal. Jur. 3d, Unfair Competition, § 24. But misappropriation requires that, at some point, the trade secret was improperly disclosed or acquired. Cal. Civ. Code

///

§ 3426.1(b). Here, it is undisputed that Pace developed the recipes, and that they were freely disclosed to New Phil's with the consent of Old Phil's.

### C.      Manufacture of "Gooba Dust"

The Court's order noted that Old Phil's had authorized Kraft to manufacture both the barbeque sauce and the rub (known as "Gooba Dust") using Pace's secret recipes. Defendants make a point of objecting to this:

> Although it is undisputed that Kraft was provided the recipe for the secret Phil's BBQ sauce (under Protection of a written confidentiality agreement), nothing in the record suggests or supports the finding that Kraft was provided with any information concerning the Gooba Dust. Because these statements are not based on the evidence before the Court, and are factually inaccurate, the Order must be corrected.

(Am. Mot. at 23:5–10.) The Court's understanding of the facts, however, comes from Defendants' own statements to the Court:

> When the Point Loma business opened, Pace and Loya could no longer make the Phil's BBQ Sauce and Gooba Dust themselves because of the volume needed to run the business, so they entered into an agreement with Kraft Foods whereby Kraft Foods would manufacture the items in bulk.

(Defs'. Opening Br. in Supp. of Valuation (Docket no. 61), 17:22–18:3.)

Apparently Defendants wish the record to be very clear on this point for some reason, even though it makes no difference to the Court's ruling or the valuation. If, as Defendants said earlier, Kraft is manufacturing Gooba Dust for New Phil's, hypothetical buyers of New Phil's would continue to be permitted to buy it from Kraft. If, as Defendants now maintain, New Phil's is making Gooba Dust for itself, it could continue to do so after the hypothetical sale.

Defendants did not mention any evidence about Kraft in their opposition to the motion for partial summary judgment, and the Court was not required to "comb the record" to look for it. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029, 1031 (9th Cir. 2001). Had the Court combed through the record, however, the only evidence on this point says that Kraft was "hired to make one of the trade secret items." (Pace Decl. ¶ 26; Loya Decl. ¶ 23.)

/ / /

Neither declaration says which item Kraft was hired to make. In other words, there is no evidence in the record to support Defendants' new representations.

If Kraft is not manufacturing the Gooba Dust and Defendants think the point is important, they should correct their earlier misstatements and submit evidence. In the absence of evidence and a showing of why the correction is necessary, the Court will not amend its order.

### III.  Conclusion and Order

The motion to certify an interlocutory appeal, and for a stay, is **DENIED**. The *ex parte* application for leave to seek reconsideration is **DENIED**. The parties are directed to prepare diligently for the evidentiary hearing on September 16, 2010 at 10:00 a.m.

**IT IS SO ORDERED**.

DATED: August 2, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge