# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HUBBARD,<br><br>                             Plaintiff,<br>   vs.<br><br>PHIL'S BBQ OF POINT LOMA, INC., a California corporation; PHILLIP C. PACE and JEFFREY A. LOYA,<br><br>                            Defendants. | CASE NO. 09CV0735-LAB (NLS)<br><br>**ORDER VALUING SHARES OF PHIL'S BBQ OF POINT LOMA, INC; AND**<br><br>**ORDER DENYING MOTION FOR STATUS CONFERENCE; AND**<br><br>**ORDER OF DISMISSAL** |

      Plaintiff Hubbard originally brought this action against the co-owners of Phil's BBQ of Point Loma, Inc., accusing them of mismanaging the corporation (using corporate assets for their own benefit, etc.)  He also sought involuntary dissolution of the corporation under Cal. Corp. Code § 1800.  Defendants counterclaimed against him for fraud (misrepresenting his ability to help grow Phil's).  Pace and Loya also decided to exercise the statutory dissolution option under Cal. Corp. Code § 2000.  Dissolution required appointing appraisers and holding a hearing to determine the fair market value of Phil's.

      The Court therefore appointed three appraisers (one nominated by each side, and the third nominated by the first two appraisers), gave them instructions concerning valuation of Phil's, received their report and the parties' briefing, and held a hearing.  At the hearing, the

Court received evidence. All documents attached to Hubbard's objections were received into evidence without objection. Defendants' exhibits were received subject to later objections Hubbard might make.

The appraisers were permitted to submit a single report, but directed to note any disagreements. They submitted their report and were unanimous. The appraisers set the value of the corporation as of April 10, 2009 at $3.97 million, making Hubbard's share worth $397,000. The appraisers were given data and other materials by the parties, visited Phil's, and conducted interviews of personnel there (none *ex parte*). The report they produced was impressively thorough, and appears very well-reasoned and well-founded. Bearing in mind the Court's instructions to the appraisers, the fact that all three were unanimous carries some weight in the Court's analysis.

Although the parties disputed the degree of Hubbard's ownership of Phil's, whether the business should or could be valued as a going concern, and issues concerning intellectual property, these have largely been addressed in earlier rulings, resulting in the Court's instructions to the appraisers. The Court has determined that Hubbard owns 10% of Phil's, and that Pace and Loya own the other 90%, and that Phil's should be valued as a going concern if possible.

Hubbard objected to the appraisers' report, arguing that they undervalued Phil's by overvaluing the value of Pace's and Loya's services, and by failing to account properly for future growth. Hubbard also argued that the the appraisers should have assumed that Phil's would not continue to employ Fred Glick to help with their expansion efforts. Hubbard submitted his own evidence in an effort to show the value of Pace's and Loya's services.

The Court is sitting in diversity and applying California substantive law. According to Cal. Corp. Code § 2000(c), a majority of the appraisers' decision essentially constitutes an award and the Court must then decide whether to confirm it. The statute provides for the Court to receive evidence if needed. Confirmation "is primarily a factual determination," and must be supported by "substantial evidence." *Trahan v. Trahan*, 99 Cal. App. 4th 62, 70 (Cal. App. 1 Dist. 2002). The law does not require appraisers' reports to be verified. *Id*. at

70 n.3. The Court can confirm the award if it finds the appraisers took the right facts into consideration, used the right valuation methods, and reached valid conclusions. The Court is not a "rubber stamp" for the appraisers, although they are knowledgeable and the parties agree they are entitled to some deference.

At the hearing, Pace's and Loya's approach was essentially to oppose Hubbard's objections, rather than make new objections of their own. As they pointed out, the appraisers' report evinces their fidelity to the Court's instructions. Citing the standard set forth in Cal. Corp. Code § 2000(b), they urged the Court to treat the referral to the appraisers as analogous to binding arbitration, and to accord great deference to it. Nevertheless, the Court is not required to be as deferential as it would be in reviewing an award under the Federal Arbitration Act. Here, if the Court determines the appraisers' award is incorrect, the Court must examine the matter *de novo* and fix the correct value itself. *See Cotton v. Expo Power Systems, Inc.*, 170 Cal.App.4th 1371, 1375 (Cal. App. 2 Dist. 2009).

Phil's has been joined as a party, but has also joined in the briefing. (*See* Docket no. 104, Notice of Joinder by Phil's in Pace's and Loya's Reply to Hubbard's Objections to the Appraisers' Report.) It is unclear what interest Phil's has in its own valuation. But in any case, Phil's has not separately briefed any issues, nor do its arguments diverge from Pace's and Loya's arguments. For the sake of clarity, this order will refer to Pace's and Loya's arguments, rather than Pace's, Loya's, and Phil's.

The Court has spent a good deal of time and care reviewing the record and evidence, and now renders its decision, which is based on the briefing, the record, and the hearing. Except as noted otherwise, the parties' arguments are taken from the briefing. Because the Court's opinion is based in part on documents containing proprietary information, which were either lodged with the Court or accepted for filing under seal, and because the documents and facts are well known to the parties, this order will discuss the issues at a fairly high level of generality.

/ / /

/ / /

**Value of Pace's and Loya's Services**

The appraisers treated owners' compensation (Pace's, Loya's, and Hubbard's) as profits. At the same time, Pace and Loya were performing work for Phil's, and the appraisers reasonably assumed a hypothetical purchaser would have to hire someone else to do their work.

Hubbard's first objection is that the appraisers should have assumed a hypothetical buyer of Phil's would hire officers at market rate, and he believes the market rate was lower than they found it would be. The appraisers determined Pace was acting as Phil's chief executive officer (CEO) and Loya, in spite of his job title as chief financial officer (CFO) was in fact acting as chief operating officer (COO). They concluded a CEO and a COO in this type and size of business would command $460,000 total annual salary. In contrast, Hubbard thinks the figure should be $195,000.

The appraisers' determination appears in exhibit 3 to the report. They used data from the Executive Compensation Assessor from ERI Economic Research Institute, for a San Diego corporation with revenues like that of Phil's. Hubbard objects to this determination on essentially two points. First, he argued the total salary was too high and should have used different data. Second, he argued that Loya was not acting as a COO, so the value of his salary should be quite a bit lower.

At the hearing, Hubbard's counsel agreed Pace was acting as a CEO. Hubbard's objections to the appraisers' report cited general data based on job descriptions from the Bureau of Labor Statistics for California for May, 2009. (Obj. at 3–4.) The appraisers' valuation is better-founded, though, because it takes into account the size of the business, while Hubbard's data gives median annual income for people with the job title of CEO. The Court credits the appraisers' estimate of the salary of a replacement CEO.

Defendants maintain Loya was listed as CFO only because Phil's was required to identify someone in that position, but agree with the appraisers that Loya was equivalent to a COO. Hubbard, for his part, maintained Loya was little more than a head cook who also
/ / /

did payroll. At the hearing, it was established the appraisers had Loya's deposition testimony, they visited Phil's, and they asked questions about Loya's duties.

The Court finds the appraisers relied on appropriate evidence, and their conclusion that Loya was in effect a COO was valid. The Court likewise finds that the appraisers' determination of the value of Pace's and Loya's services was also valid.

**Salary of Fred Glick**

Hubbard also argues that if Phil's was properly considered a more mature business rather than a startup, the salary of Fred Glick should have been "backed out" and profits adjusted accordingly. Phil's paid Glick $150,000 per year plus a possible bonus for helping prepare for expansion (apparently similar to what Hubbard was hired to do). He points out his own salary was backed out, although arguably this was because it was clear he would no longer be working for Phil's, and was effectively being replaced by Glick. At the hearing, Defendants represented that there was no written job description for Glick.

The appraisers' determination of Glick's duties and, therefore, how to account for his salary, necessarily rests on their judgment of whether they thought he was working for Phil's or for Pace and Loya (probably through Old Phil's,[1] which the two of them owned but Hubbard did not), or some combination. The appraisers, it is worth noting, visited the site and conducted face-to-face interviews. Their conclusions about Glick's role and his likely role in the future rest on evidence that is as solid as it reasonably could be.

Pace and Loya also argue Glick's compensation was never identified as excessive, and so shouldn't be discounted for that reason. They point out the appraisers didn't mention any concerns about overstaffing or duplicative staffing. They also argue Hubbard's compensation was backed out because all owners' compensation was backed out to normalize the earnings analysis. This is explained somewhat in note 1 to schedule 6 of the appraisers' report, which says owners' compensation was taken out and added to profits, but the cost of replacing Pace and Loya was accounted for. Hubbard agrees part of Glick's

---

[1] Earlier briefing and orders identified the pre-existing business, which Hubbard didn't own any share of, as Old Phil's. The Phil's that is being valued here is also sometimes referred to as New Phil's, to distinguish it from Old Phil's.

duties was to replace him as an "expansion" consultant. This is supported by Glick's deposition at page 16. Therefore it is reasonable to count Glick's compensation as an expense but to back Hubbard's out.

The Court does not agree with Hubbard's characterization of Glick as a short-term consultant. The evidence shows that Glick was versatile. Though his expansion consultation services would cease to be necessary at some point, it's logical that he would be taking on other necessary duties, such as brand-management or market share consultant. Though some expenses would naturally phase out as the business grows and matures, it is not appropriate to account for that change by assuming all analogous expenses will cease, because others will inevitably take their place.

The Court therefore finds the appraisers' assumptions and conclusions to be valid.

**Valuation, Accounting for Future Growth**

The appraisers valued Phil's as a going concern, and the Court finds they were reasonable in doing so. Pace and Loya point out the appraisers considered growth, and cite pages 7 and 19, including note 4 to schedule 6 of the report. This assumes a sustainable long-term growth rate of 3%, which would be considered when valuing the business as of April 10, 2009. The appraisers also calculated the value using both the market approach (a multiple of EBITDA), and the hybrid approach (considering the value of excess earnings). They considered, but did not rely on other methods such as the discounted cash flow method.

At the hearing, Hubbard suggested the appraisers used the wrong valuation method and in part erroneously accounted for costs of expansion work being done by Old Phil's, not New Phil's. He also cited page 9 of the appraisers' report, suggesting that the discounted cash flow was improperly overlooked. He points out that the appraisers assumed there were no impending events at the valuation date that would likely materially affect cash flows, so this method would merely restate analysis performed earlier.

At the hearing (but not in briefing), Hubbard noted that the argued the appraisers should have taken into account the sales of barbeque sauce as an impending event. But,

as the Court determined earlier in this litigation, the sauce recipe belongs to Old Phil's; New Phil's has a license to use it, and would be permitted to use the sauce going forward, but the recipe is not proprietary to it. As of April, 2009, New Phil's could not have entered into the kind of business arrangements Hubbard envisioned. Hubbard also raised arguments based on developments he thought were in process as of April, 2009, or foreseeably likely. Pace and Loya, for their part, argued the valuation properly considered probable growth, not speculative growth. The Court finds the appraisers either accounted for them as part of their overall estimates, or properly discounted them as speculative or unlikely.

In short, the Court finds the appraisers' assumptions and approach to be reasonable and valid.

**Share Purchase Protocol**

Whatever the Court finally determines to be the value of Hubbard's shares, Pace and Loya have the right but not the obligation to purchase those shares at the value set. *Mart v. Severson,* 95 Cal. App. 4th 521, 525 (Cal. App. 1 Dist. 2002). That said, all parties have represented that the shares would be purchased, and have asked the Court to set a protocol for the purchase. For reasons discussed above, the Court finds the appraisers' valuation of Hubbard's 10% ownership of Phil's as correct.

The Court therefore directs the parties to use the 30-day simultaneous protocol as discussed at the valuation hearing. A cashier's check in the amount identified by the appraisers is to be delivered to Hubbard's counsel within thirty calendar days of the date this order is issued. Hubbard is simultaneously to deliver his shares with the assignment executed in blank. The parties may do this in any fashion acceptable to both of them.

**Motion for Status Conference**

Hubbard moved, *ex parte,* for a status conference concerning other claims he may have against all Defendants. The application mentioned his concern that discovery in those other claims be taken. His application also mentioned his concerns about tax filing. Pace and Loya did not oppose the application, but did represent that the corporate tax return for Phil's was on extension, and therefore no K-1 had yet been issued.

The Court had anticipated issuing this ruling earlier, and appreciates the parties' patience. Now that the Court has made its ruling, Hubbard's request for a status conference (Docket no. 108) is now moot and is therefore **DENIED**.

**Conclusion**

The parties shall comply with the terms of this order within 30 calendar days. Having adjudicated all claims, the Court **DISMISSES** this action **WITH PREJUDICE**. The Clerk is directed to enter judgment.

**IT IS SO ORDERED**.

DATED: March 23, 2012

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge