# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HUBBARD,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>PHIL'S BBQ OF POINT LOMA, INC., a California corporation; PHILLIP C. PACE and JEFFREY A. LOYA,<br><br>　　　　　　Defendants. | CASE NO. 09cv0735-LAB (KSC)<br><br>**ORDER GRANTING RENEWED MOTION TO FILE DOCUMENTS UNDER SEAL;**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS; AND**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

　　　Defendants Phillip Pace and Jeffrey Loya filed a motion to dismiss Plaintiff Thomas Hubbard's complaint. (Docket no. 127), as did Phil's BBQ of Point Loma, Inc. (Docket no. 128).[1] Hubbard in turn filed a motion for summary judgment, which is now fully briefed. Defendants Pace and Loya also renewed their *ex parte* motion to file the declaration of John Cheng, C.P.A. (accountant for Phil's) under seal.

///

---

[1] Phil's predecessor went by a similar name, and in the briefing the two corporations are referred to as Old Phil's and New Phil's. Only New Phil's is involved with Hubbard's remaining claims, however.

Hubbard's two remaining claims are that Phil's breached its consulting agreement with him by failing to pay him after 2008 even though he had performed his consulting duties, and that all Defendants breached the shareholder agreement with Hubbard by failing to issue required distributions of corporate profits and distributions to reimburse him for taxes owed.

**Sealing**

The Court previously denied Pace's and Loya's unopposed application to file documents under seal, noting that it did not address the factors the Court must consider before ordering potentially case-dispositive documents sealed. They then renewed their motion, citing authority and providing reasons. (Docket no. 144.)

The Court begins with the strong presumption that Cheng's declaration should be publicly accessible. *See Kamakana v. City and Cnty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir.2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.2003)). As the application points out, however, the document at issue relates to the corporation's finances. The public at large has little interest in the information it contains. As the application points out, however, there is a high probability that disclosure of financial details such as amounts of distributions made to shareholders, would harm the corporation's business relationships and reveals Pace's and Loya's own personal financial information. Disclosure of this information to creditors or others with whom Defendants do business would unfairly burden Defendants and harm their business interests, and would give competitors an unfair advantage. The Court in making its rulings can discuss the information at a high level of generality without harming Defendants' business interests, while at the same time adequately informing the public of the reasons for the Court's rulings. The Court therefore finds the standard for sealing is met here.

**Hubbard's Remaining Claims**

    **Shareholder Distributions**

Both motions to dismiss argue the shareholder agreement's provision concerning distributions is unenforceable as a matter of law, and that the relief Hubbard seeks was subsumed within the petition for corporate dissolution. Pace and Loya's motion to dismiss

also attacks the content of Hubbard's pleading in the complaint. In opposition, Hubbard argues that he can still prevail under a different theory. In essence, his argument is that because Defendants agreed to reimburse him for taxes and failed to do so, they are liable.

Even accepting that Hubbard has not pleaded his claim under the right theory, it is the type of claim countenanced by state law. In essence he is bringing a contract or quasi-contract claim, arguing that he was promised tax reimbursement, that he lived up to his end of the bargain, and that Defendants failed to pay him all they owed. Assuming that is what happened, the Court, sitting in equity, is not prepared to allow Defendants to receive the benefits of the bargain without living up to their obligations; Hubbard would be entitled to relief under some theory.

But Defendants also argue that Hubbard's relief has been subsumed within the relief provided him as a result of the valuation, which occurred earlier in this case. Through that process, Phil's was valued and Hubbard received a cash payment representing his 10% share in the corporation.[2] In other words, Hubbard should not recover twice.

This is very likely a good defense, although the information provided is not quite sufficient to support judgment as a matter of law. Accepting Hubbard's version of the facts, *see Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996) (when ruling on motion to dismiss, Court accepts all factual allegations as true, and draws all reasonable inferences from them in favor of the non-moving party), Phil's made no distributions for tax reimbursement to any of the shareholders from 2008 onward. This means that, because Hubbard owned 10%, he might have been entitled to reimbursement for his taxes on 10% of the S-corporation's income. Pace and Loya, as the remaining shareholders, would have been entitled to reimbursement for their taxes on the remaining 90% of the income.[3]

---

[2] Initially, Hubbard owned only a 5% interest in Phil's, but under the amended shareholder agreement he owned 10%, and Pace and Loya each owned 45%. During all time periods at issue here, Hubbard owned a 10% interest.

[3] The shareholder agreement calls for all shareholders to be treated alike with respect to distribution of profits, *i.e.*, profits attributable to one shareholder should not be withheld while profits attributable to another are distributed. But Hubbard has not argued that Phil's treated him differently than it treated Pace and Loya with respect to distributions or tax

The result of shareholders not getting reimbursed was that Phil's got to keep that money, and Phil's value went up in proportion to the shareholders' forgone reimbursements.[4] In this respect the forgone tax reimbursements might be compared to paid-in capital. Hubbard, as a 10% shareholder, would have seen a corresponding rise in the value of his interest in Phil's, and this increase in value would have been *pro rata* for each of the shareholders. Ultimately, when Hubbard was paid for his interest in Phil's, he realized the gain. Had he and the other shareholders received reimbursements, the value of Phil's would have been lower than it ultimately was at the time of valuation. In short, even assuming Hubbard lost his *pro rata* share of the tax reimbursements, it would appear he was paid back, *pro rata*, when his shares in Phil's were cashed out.

This analysis notwithstanding, Hubbard might theoretically be entitled to some reimbursement if he was in a higher tax bracket than Pace and Loya. The pleadings, however, rule out this possibility. First, Hubbard's allegations regarding the profits Phil's made in tax years 2008 through 2010 make clear the attributed profits from Phil's alone were enough to put both Pace and Loya in the top tax bracket for those years. (*See, e.g.*, Mot. for Summ. J. at 17:16–18:1.)  Therefore Hubbard was either in the same bracket, or in a lower one, at least for those years, and would not have been entitled to reimbursement at a higher rate than the others.  Second, § 13.6(e) and (f) of the shareholder agreement provide that even if a shareholder were in a higher tax bracket than others, he would not be entitled to be reimbursed at a higher rate, and that distributions can only be made on a *pro rata* basis.

/ / /

/ / /

---

reimbursements.

[4] This is not to say Phil's value at the time of valuation reflects the forgone reimbursements dollar-for-dollar. Depending on how productively the retained money was used, Phil's value might have increased much more or less than one dollar for ever dollar not paid out in reimbursements. But the point is that the increase was spread equally among all shareholders on a *pro rata* basis. When Phil's was valued at Hubbard's request, all shareholders profited from the retained money in proportion to their ownership interest. In this respect, Hubbard was treated the same as Pace and Loya.

Hubbard also claims distribution of profits under § 13.6(a) of the shareholder agreement. He claims he is owed $8,345 for tax year 2008, $17,896 for tax year 2009, and $98,848 for tax year 2010. These claims, however, are subject to the same defense.

**Consulting Agreement**

Hubbard's claim here is that he carried out consulting services under an original consulting contract, and that this contract was then amended to account for the fact that more work was being required of him. He alleges he did a good job, and Defendants agreed he did a good job, but they stopped paying him, excusing further performance on his part. There is no dispute Defendants stopped paying Hubbard. What is at issue is whether they were justified in doing so, and if not, what they owe him. There is also no dispute that the original consulting agreement specified it could only be modified in writing, and that the amendment Hubbard is relying on was made orally.

Unlike the disbursement claim, any amount Hubbard might be owed would not be subsumed within the valuation. With the disbursements, all shareholders forwent distributions and all saw the value of their interest in Phil's rise, in proportion to their ownership interests. With regard to the consulting agreement and Hubbard's consulting services, however, Hubbard alone did the work and earned payments. Defendants may be entitled to reduce any recovery by 10%, as an offset to account for his interest in Phil's, for which he has already been paid, but they would still owe the remaining 90%.

Although Defendants attack Hubbard's allegations and the form of his pleadings, the Court is not prepared at this stage of litigation to dismiss Hubbard's claims simply to require him to replead. Under Fed. R. Civ. P. 15(b), the Court has discretion to allow amendment of claims at, or even after trial. *See Drew v. Equifax Information Servs., LLC*, 2010 WL 5022466, at *14 (N.D.Cal., Dec. 3, 2010) (citing and discussing case law pertaining to amendment of claims at trial).

Defendants raise defenses of failure of consideration, statute of frauds, and the original agreement's requirement that it could only be amended in writing. With regard to consideration, if as Hubbard says, he was asked to do more work than the original consulting

agreement contemplated, this would constitute consideration. Hubbard argues that because the agreement, as amended, was performed for a year and a half before the breach, and because the board later ratified the amended agreement (in writing), it is enforceable. The Court has reviewed the written documents and, taking them as a whole, it appears Defendants did agree in writing to modify the original agreement. (Hubbard Decl. in Supp. of Mot. for Summ. J., Ex. 3 (amended shareholder agreement); Benjamin Decl. in Supp. of Mot. for Summ. J., Exs. D (transcript of deposition discussing ratification); E (board minutes ratifying actions taken by directors).) These documents don't set forth all the specifics of the amendment, but they do show an amendment was contemplated in consideration for additional efforts by Hubbard, and that such an amendment was made. Although the higher amount Hubbard was to be paid for his additional efforts wasn't specified in these writings, it is capable of objective determination, *e.g.*, based on the increased amount Hubbard was actually paid. *See Forde v. Vernbro Corp.*, 218 Cal.App.2d 405, 407–08 (Cal. App. 2 Dist., 1963) (contractual terms such as price can be objectively determined). Although the Court is inclined to decide that these documents together amount to a written amendment of the consulting agreement, the Court will reserve on this until trial.

In the alternative, Hubbard raises waiver and estoppel, arguing that because the amended consulting agreement was carried out for a year and a half before the breach, Defendants have waived their objections to the modification. *See Wagner v. Glendale Adventist Medical Center*, 216 Cal. App. 3d 1379, 1388 (Cal. App. 2 Dist. 1989). Under California law, a party to a contract can waive contractual terms, including a "no oral modification" clause. *See Davidson v. ConocoPhillips Co.*, 2009 WL 2136535 at *4 (N.D.Cal., July 10, 2009) (citing *Biren v. Equality Emergency Medical Group, Inc.*, 102 Cal. App. 4th 125, 141 (Cal. App. 2 Dist. 2002)). But the party claiming waiver must show evidence of an intent to waive the term. *Id*.

Hubbard's claim is not appropriate for summary judgment, because some material facts are in issue. The main issue is whether he performed his duties and thus fulfilled his part of the bargain, or whether, as Defendants argue, he did not do his job well and had to

be replaced. Although there is evidence they were satisfied with his work, it does not meet the standard required for summary judgment. In addition, assuming Hubbard was not capable of carrying out the expanded duties required under the amended consulting agreement, he could not recover damages from the time of the breach on.

Pace and Loya point out Hubbard was a consultant for Phil's, and not for them individually, so if anyone is liable it is Phil's only. Hubbard does not dispute this, but describes both the original and the amended consulting agreement as being between Phil's and himself, and also argues that Phil's breached the agreement. (Mot. for Summ. J. at 5:9–9:7.)

**Conclusion and Order**

For the reasons set forth above, the application to file documents under seal (Docket no. 144) is **GRANTED**. The motions to dismiss (Docket nos. 127, 128) are **GRANTED IN PART**. Hubbard's claims for distributions of corporate profits or tax reimbursements are **DISMISSED**. Because this eliminates all claims against Pace and Loya, they are **DISMISSED AS PARTIES**. Defendants' motions are **DENIED** with respect to Hubbard's claim based on the consulting agreements. Hubbard's motion for summary judgment (Docket no. 136) is **GRANTED IN PART**, only with respect to limited rulings as a matter of law, as set forth above. In all other respects, it is **DENIED**.

With regard to the upcoming trial, the Court has received voluminous exhibits and briefing. The Court has had the benefit of working on this case for quite some time, and the issues have been sharpened by its rulings along the way. Even before today's ruling, it should have been clear to the parties that this was not to be a lengthy trial. (*See* Docket no. 137 (Pretrial order, limiting entire trial to two days).) After today's ruling, only one claim remains to be tried.

While recognizing that several important issues remain, and without circumscribing the evidence or arguments the parties are permitted to put on, the Court encourages them to focus on the few central questions pertaining to this claim. These include whether Hubbard adequately performed his consulting duties, or whether his performance was so

poor as to amount to a breach; and (assuming the Court finds liability) what damages should be awarded.

**IT IS SO ORDERED**.

DATED: December 14, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge