# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| THOMAS HUBBARD, | CASE NO. 09CV0735-LAB (KSC) |
|---|---|
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL;** |
| vs. | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION; AND** |
| PHIL'S BBQ OF POINT LOMA, INC., a California corporation; PHILLIP C. PACE and JEFFREY A. LOYA, | **ORDER FOR ENTRY OF JUDGEMENT** |
| Defendants. | |

After most of the issues in this case had been disposed of, the Court held a bench trial on the sole claim remaining, the first amended complaint's first claim for relief. That claim was for money Plaintiff Thomas Hubbard believed he was owed under an amended consulting agreement. The Court allowed some amendments of claims and defenses at trial, on terms it considered just. Hubbard also sought reconsideration, in part, of an earlier decision. He asks that the Court adjust its ruling by awarding damages the Court had found were subsumed within payments Hubbard already received. The Court ordered briefing on Hubbard's *ex parte* application, and is now prepared to rule.

Phil Pace and Jeff Loya were dismissed as Defendants at the summary judgment stage, but their actions still form part of the fact pattern of the claim at trial and they now own Phil's. Both appeared at trial, and Pace testified.

**Findings of Fact and Conclusions of Law**

Hubbard's claim is that his original consulting agreement was modified based on new duties he was going to have to undertake (in connection with opening of a restaurant). His pay was to increase from $3333.33/month to $8333.33 per month, and Defendants in fact began paying him this higher amount. Phil's[1] stopped paying him, although he says he stood ready to continue with his consulting work. There is no dispute Phil's started paying him at the higher rate beginning in June, 2007, and that the last check Phil's wrote to him was in November of 2008 (for his work in October). Hubbard kept working anyway, without pay, into the early part of 2009. He took a new job out of the region beginning April 1, 2009, and filed this action two weeks later.

What is in dispute is (1) whether the consulting agreement was validly amended; (2) whether Hubbard adequately performed his consulting work—or whether, as Phil's argues, his work was inadequate so he had to be replaced; and (3) if Hubbard is owed money, how much he is owed.

The Court announced its findings, conclusions, and reasoning from the bench, and those are incorporated here by reference.

The Court finds that Hubbard's consulting agreement was validly modified. The amended shareholder agreement and the board of directors' minutes ratifying the directors' earlier actions serve as written evidence of that, and other evidence presented at trial showed this agreement was in force. These writings don't set forth all the specifics of the amendment, but they do show an amendment was contemplated in consideration for additional efforts by Hubbard, and that such an amendment was made. Although the higher amount Hubbard was to be paid for his additional efforts wasn't specified in these writings, it is capable of objective determination, based on the increased amount Hubbard was

//

---

[1] In earlier stages of the litigation, two companies, known as Old Phil's and New Phil's, were part of the fact pattern. The parties followed this naming convention, even using "New Phil's" in briefing the motion for partial reconsideration. At this point, however, Old Phil's plays no part in the litigation. Therefore, Phil's BBQ of Point Loma, Inc., earlier referred to as New Phil's, will simply be referred to as Phil's.

actually paid. *See Forde v. Vernbro Corp.*, 218 Cal.App.2d 405, 407–08 (Cal. App. 2 Dist., 1963) (contractual terms such as price can be objectively determined).

In the alternative, the Court finds that the parties orally amended the consulting agreement, and actually began carrying it out. The consulting agreement included a clause forbidding oral modifications. But under California law, a party to a contract can waive contractual terms, including a "no oral modification" clause. *See Davidson v. ConocoPhillips Co.*, 2009 WL 2136535 at *4 (N.D.Cal., July 10, 2009) (citing *Biren v. Equality Emergency Medical Group, Inc.*, 102 Cal. App. 4th 125, 141 (Cal. App. 2 Dist. 2002)). There was adequate evidence to support a waiver of this clause. For example, Phil's paid Hubbard at the higher rate from June, 2007 to November, 2008. Phil's would not have increased his pay so dramatically unless Defendants intended to waive the clause.

Hubbard's last payment for work he did for Phil's was in November of 2008, for work he did in October. Phil's then breached the amended consulting agreement by failing to pay him at all in December, for work done during November, and it paid him nothing thereafter.

The amended consulting agreement limited Hubbard's outside employment somewhat, but it didn't forbid outside restaurant consulting work altogether. Sizzler, because it was outside Phil's territory and a different type of restaurant, was not a competitor of Phil's for purpose of the agreement. While Hubbard was not contractually barred from working for Sizzler as well as Phil's, the Court finds that as a practical matter he could not work for both. The evidence also showed that Hubbard had met his contractual obligations to Phil's until he began working for Sizzler on April 1. The Court does not agree with Defendants' position that his work was of such low quality or performed in bad faith so as to damage Phil's. It is clear there was increasing suspicion and acrimony among the various parties, and particularly between Hubbard and Pace. But the Court does not find Phil's is entitled to any kind of offset for any poor work or malfeasance by Hubbard, or that any of this amounted to a breach of the consulting agreement by him. If his work had been insufficient, he could and should have been given notice and an opportunity to cure; but instead, Phil's merely

//

stopped paying him. The Court therefore finds Hubbard's consulting work for Phil's ceased on March 31, 2009.

Hubbard argued that as soon as Defendants breached, he was entitled to the full value of the contract; in other words, he should be paid his full salary for the full term of the consulting agreement even after he took a consulting job with Sizzler. He also argued that, because the consulting agreement didn't prevent him from working for Sizzler, the money he earned for consulting work there should not offset damages caused by Defendants' breach. Defendants, on the other hand, ask the Court to give them credit for the higher salary he earned at Sizzler by using the increased salary to offset earlier amounts Phil's owed him but never paid. Neither of these approaches is correct.

Hubbard was obligated to attempt to mitigate damages, and when he obtained a similar position with Sizzler that paid him more than he earned for Phil's, he successfully mitigated. The approach Hubbard suggests would effectively eliminate the mitigation requirement, and is not adequately supported by the evidence. Although Hubbard's contract did not preclude him from taking other employment, it did restrict his outside employment somewhat. As a practical matter, the time demands of both jobs would have prevented him from working for Phil's and Sizzler at the same time. Hubbard might have been able to take on some consulting work elsewhere while working for Phil's, but the demands of his work for Sizzler wouldn't have permitted him to work for Phil's too. Because he began working for Sizzler April 1, 2009 and earned more than he would have at Phil's, the Court finds Phil's does not owe him for consulting on or after that date. He worked at Sizzler through the remainder of the term set forth in the amended consulting agreement.

Defendants' approach represents an improper attempt to offset past losses with money Hubbard earned later for other work. One problem with this approach is that Hubbard could potentially have been working for Sizzler beginning in November, 2008 if he had known Phil's was going to stop paying him for work he did during that month and afterwards. Instead of going unpaid from November, 2008 through April, 2009, he could have been earning a higher salary the entire time. A second and related problem is that Defendants'

approach inequitably confers a benefit on them at Hubbard's expense. Phil's got, and benefitted from, Hubbard's labor from November, 2008 through April, 2009 without paying him anything. Now they ask the Court to apply Hubbard's own wages to that loss. In effect, Hubbard would have been toiling away at Sizzler in order to pay his own unpaid back salary at Phil's. In other words, he would have had to work twice for the same money.

A third problem is that the amended consulting agreement was not exclusive. Even if Hubbard was not actually earning more money by working on the side while consulting for Phil's, he still could have done so. *See Hitz v. First Interstate Bank*, 38 Cal. App. 4th 272, 282 (Cal. App. 1 Dist. 1995) (citing 5 Corbin on Contracts, § 1041) (holding that post-breach gains made by an injured party should not be deducted from otherwise recoverable damages, unless the gains could not have been made in the absence of a breach). Here, the breach did not create the opportunity for Hubbard to earn a higher salary, because he could have done that even before the breach. The breach may have prompted him to take a different position that paid more, but it did not make that higher rate of pay possible. *See id.* at 282–83 (because gain was not made possible by the breach, it should not have been deducted from damages).

The Court therefore finds Phil's breached its agreement with Hubbard, and that it owes him $8333.33 per month for each of the months of November, 2008 through March, 2009. Hubbard also claims prejudgment interest, which is provided for under state law, where a plaintiff is due a fixed sum under a contract. *See Great Western Drywall, Inc. v. Roel Const. Co., Inc.*, 166 Cal. App. 4th 761, 767 (2008) (quoting *Leaf v. Phil Rauch, Inc*. 47 Cal. App. 3d 371, 375 (1975)).Where, as here, the contract doesn't specify the rate of interest, the default is 10%. Cal. Civ. Code § 3289(b). Hubbard is therefore entitled to $41,666.65 plus 10% prejudgment interest.

The consulting services agreement, as amended, provided for an award of attorney's fees in any dispute arising in connection with the agreement. Because Hubbard is the prevailing party, he is entitled to attorney's fees attributable to his claim for unpaid consulting fees. While he requested attorney's fees, he has not filed a motion for fees or documented

the fees he thinks are owed. If the parties can't agree on the fees owed, or wish to explore settling the fees issue, they should promptly contact the chambers of Magistrate Judge Karen Crawford.  In the absence of an agreement between the parties or a settlement, Hubbard shall submit his fees bill to Magistrate Judge Crawford by no later than May 17, 2013, and Phil's shall file any opposition by May 31, 2013.  Magistrate Judge Crawford shall then prepare a Report and Recommendation and submit it to this Court, within 90 days of the date this Order is entered.

**Motion for Partial Reconsideration**

This motion concerns taxes Hubbard paid on profits Phil's earned. He did not actually receive those profits, but because Phil's is an S-corporation and he was a shareholder, they were attributable to him. Section 13.6 of the shareholder agreement provided that he would be reimbursed. The Court previously denied Hubbard's motion for summary judgment, finding that although the owners' taxes weren't reimbursed as required under the shareholder agreement, this was accounted for in payments Hubbard had already received. Hubbard relies on both contract and quasi-contract theories. The Court's earlier ruling pointed out that in deciding this issue it is sitting in equity, and neither party challenges that now.

The motion for partial reconsideration focuses on a disparity in dates. Earlier in the litigation, Phil's was valued and Hubbard was paid for his shares. The valuation date, *i.e.*, the date as of which Phil's was valued for purposes of valuing Hubbard's shares, was April 11, 2009, the day after Hubbard filed this action. Hubbard now points out that he was required to pay taxes on the retained earnings from April 11, 2009, when his shares were valued, through April 17, 2012, when his shares were actually purchased. He now seeks reimbursement of taxes for those dates. He received K-1 forms for the tax years 2007 through 2011 and paid taxes based on those forms, but has not yet received his K-1 for that portion of tax year 2012 before he was bought out.

Ordinarily, motions for reconsideration are disfavored, and are appropriate only where the Court is presented with newly discovered evidence or a change in controlling law, or has

committed clear error. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The Court, of course, may reconsider its own rulings at any time before final judgment is entered. *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). Defendants argue that final judgment was already entered, but for this purpose final judgment means final judgment in the case, not partial judgment as to some of the issues.

Here, Hubbard did not clearly raise or brief the issue the first time it was presented, although he could have done so. Having said that, Hubbard did not know, and may still not know, the full amount of his tax liability, which grew while his motion was pending. The Court is also mindful of the policy favoring decisions on the merits, which the Court's earlier decision did not reach as to this issue. The Court has the power to reconsider this aspect of its denial of Hubbard's summary judgment, and will do so. Furthermore, the Court has now had the benefit of a trial, which has settled issues that might have counseled against a grant of summary judgment.

Defendants' main argument is that section 13.6 is unenforceable under California law, because it usurps the board of directors' authority to declare dividends. They argue that because Phil's is not a statutory close corporation, this clause is only precatory, and not binding. They argue this violates Cal. Corp. Code § 300(a) without meeting the enabling requirements of § 300(b). Defendants' briefing seems somewhat confused as to what Hubbard is asking. Though he asked for more earlier, at this point he is only asking that his taxes be paid, not that he receive a distribution of all profits. Sections 13.6(c) through (e) explain that the purpose of these distributions was to offset shareholders' federal income tax liability; under section 13.6(d), in fact, shareholders could be required to reimburse Phil's for dividends received in excess of taxes on profits.

Under Cal. Corp. Code § 300(a), the board of directors is entrusted with carrying out the daily business of a corporation (other than a close corporation), and there is no dispute here this includes decisions regarding issuance of dividends. *See In re Talbot's Estate*, 269 Cal. App. 2d 526, 537 (Cal. App. 1 Dist. 1969) ("Ordinarily, whether a private corporation is to declare and pay a dividend, or make distribution of its assets is a matter committed to the

sound business judgment of the corporation's board of directors. ") Here, however, not only the shareholders but also the corporation itself ratified the shareholder agreement. The language of section 13.6 is not precatory, but rather says what the corporation is to do. By mutual agreement, the shareholders could ignore this requirement, but obviously Hubbard does not consent.

Defendants ask the Court to let them go to trial on the issue of whether Hubbard kept up his end of the bargain. (Opp'n to Mot. for Partial Reconsideration, 14:10–22.) But there is no reason to retry this issue; the Court has already determined Hubbard kept the bargain he made. Furthermore, both sides had an opportunity to offer evidence at the summary judgment stage, and as noted the Court is now reconsidering in part its denial of summary judgment. Defendants could not resist summary judgment simply by insisting on presenting evidence at trial, and they cannot now resist reconsideration of denial of summary judgment using the same method.

Hubbard briefed the amount he thought he was owed for tax reimbursement, and Defendants did not attempt to rebut it or argue he had miscalculated. His briefing sets the total amount owed at $83,797, and he explains the method by which this was calculated.

Hubbard's motion for partial reconsideration is therefore **GRANTED** and the Court determines he is entitled to $87,797 for unreimbursed taxes.

**Conclusion and Order**

The Court finds for Plaintiff and against Defendant on Plaintiff's first claim for relief, and awards him $41,666.65 plus 10% prejudgment interest. His motion for partial reconsideration is **GRANTED** and Phil's is **ORDERED** to pay him $87,797.00. The Clerk is directed to enter judgment for Plaintiff and against Defendants.

**IT IS SO ORDERED**.

DATED: May 1, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge