1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

THOMAS HUBBARD,

                                        Plaintiff,

        vs.

PHIL'S BBQ OF POINT LOMA, INC., a
California corporation; PHILLIP C. PACE
and JEFFREY A. LOYA,

                                        Defendants.

CASE NO. 09CV0735-LAB (KSC)

**ORDER AWARDING COSTS AND
ATTORNEY'S FEES**

18        This case originally raised several business disputes governed by California law. The

19   Court, sitting in diversity, adjudicated most of those disputes. After denying summary

20   judgment on Plaintiff Thomas Hubbard's claim that he was improperly denied compensation

21   under the parties' consulting agreement, the court held a bench trial on that sole issue.

22        Hubbard took the position that the consulting agreement had been amended to raise

23   his monthly pay, but Defendants breached the agreement when they stopped paying him in

24   November of 2008. He argued that the consulting agreement was amended to take into

25   account additional work he was required to do for Phil's BBQ of Point Loma ("Phil's").  He

26   brought a claim seeking the money he believed he was entitled to for the rest of the term of

27   the amended consulting agreement. Defendants took the position that the consulting

28   agreement had never been amended, or that if it had, Hubbard had breached it by failing to

1  perform his duties adequately, by taking a job with another company (Sizzler), and by filing
2  suit. Defendants argued that the amount Hubbard later earned at Sizzler should be applied
3  retroactively to any obligation they might have to pay him. Because, in the long term, he
4  earned more at Sizzler than he would have earned if he had remained employed at Phil's,
5  this would have the effect of wiping out their obligation to pay him anything.  Hubbard, for
6  his part, argued that the entire amount owed to him under the consulting agreement became
7  due when Phil's breached by ceasing to pay him even though he continued to work there.
8  He also argued he could have done consulting work for both Phil's and Sizzler at the same
9  time, and that the money Sizzler paid him should therefore not be treated as mitigating
10  damages.

11       In his amended complaint, Hubbard requested costs and attorney's fees, which the
12  consulting agreement provided for. In his trial brief, Hubbard again asserted that he was
13  entitled to fees under the consulting agreement. (Pl.'s Trial Br. (Docket no. 156) at 2 n.1.)
14  He did not at that time ask for an award of fees, but said he would apply for them after trial.
15  (*Id*.) At trial, he again argued he was entitled to costs and attorney's fees under the
16  consulting agreement.

17       After hearing all the evidence, the court announced its findings from the bench, which
18  it confirmed and supplemented in written findings of fact and conclusions of law. (Docket no.
19  181.) The Court found that the consulting agreement had been amended, that Hubbard had
20  adequately performed under it and had not breached it, and that he was entitled to be paid.

21       As part of its findings, the Court determined that Hubbard was the prevailing party for
22  purposes of costs and fees under the consulting agreement, and ordered briefing on the
23  issue. The parties both filed briefs as ordered. Hubbard's brief, as expected, focused on the
24  amounts he believed he was entitled to. Defendants' brief, however, focused primarily on
25  whether Hubbard was entitled to costs and fees at all. The body of their brief is thirteen
26  pages long, of which only four are devoted to the proper amount of fees. Of those four
27  pages, three are devoted to a lodestar analysis, and there is only about one page of
28  objections to hours billed and claimed.

1

**Whether Hubbard is Entitled to an Award of Costs and Fees**

2          The parties agree that the consulting agreement contains an attorney's fees provision,

3   and Defendants' brief attaches a copy of the consulting agreement. Paragraph 11(e) on

4   page 9 of that agreement provides:

5              In any dispute or controversy arising under, or in connection with, the
               Agreement the prevailing party shall, in addition to other relief, be entitled to
6              an award of reasonable attorneys' fees and costs incurred in connection with
               any dispute under the Agreement, including the costs and fees of expert
7              witnesses and/or consultants.

8          Because the Court is sitting in diversity, it applies California substantive law and

9   federal procedural law. *See Zamani v. Carnes*, 491 F.3d 990 The parties agree that

10  California Civil Code § 1717 governs the award of attorney's fees where, as here, the

11  contract provides for them. Under § 1717(a), the "party who is determined to be the party

12  prevailing on the contract" is entitled to reasonable attorney's fees as well as other costs.

13         Defendants first argue that the request for fees is premature and procedurally

14  defective. In support of this, they cite § 1717(b)(10, which says that when a party files a

15  noticed motion, the court is to determine which party is the prevailing party for purposes of

16  this provision. On this sole basis they assert that Hubbard's request for fees is premature.

17  This is wrong for several reasons. First, it was the Court, not Hubbard, that found Hubbard

18  to be the prevailing party and ordered briefing. Hubbard did not err by following the Court's

19  order. Second, Defendants are asking for reconsideration of the Court's determination, but

20  they haven't met any of the requirements for doing so. *See* this Chambers' Standing Order,

21  ¶ 4(j); compare Order of December 20, 2012 (noting that question of reconsideration had

22  been raised at trial, and setting briefing schedule). In fact, they raised this issue for the first

23  time in their opposition to the request for attorney's fees.

24         Third, as noted above, the Court applies federal procedural law, not California law

25  such as § 1717(b)(1)'s noticed motion requirement. Defendants haven't cited any federal rule

26  or requirement that would have required the Court to adjudicate the issue using the

27  procedure they now urge. In the absence of such a rule, the Court is empowered to regulate

28  / / /

1  proceedings so as to do justice while avoiding unnecessary delay and expense. *See* Fed.
2  R. Civ. P. 1 and 83(b).

3      Defendants go on to give the Court reasons why it erred by finding that Hubbard was
4  the prevailing party. These reasons, in fact, account for the largest part of Defendants'
5  argument. If the Court found any of these arguments persuasive, it would have given
6  Hubbard an opportunity to respond. Because they are not persuasive, Hubbard need not file
7  any opposition to them.

8      Defendants' argument is based solely on the amount he requested in damages, and
9  the amount he was awarded. He sought payment for the remainder of the contract period
10 under the consulting agreement, under the theory that he could have worked both for Sizzler
11 and for Phil's. Because the Court found he could not have worked for both, his damages
12 were cut off as of the date he began working for Sizzler, because he successfully mitigated,
13 as he was required to do. Instead of being awarded the $250,000 he requested, this one
14 finding resulted in his damages being reduced to $41,666.65 (not counting prejudgment
15 interest). Defendants argue that because Hubbard received less than 17% of the amount he
16 sought under the consulting agreement, he was not the prevailing party. Defendants argue
17 instead that they were the prevailing party or, alternatively, that there was no prevailing party,
18 because they and not Hubbard obtained the greater relief under the contract.

19     Where, as here, neither party achieves a complete victory, it is within the trial court's
20 discretion to determine which party (if any) prevailed sufficiently to justify an award of
21 attorney's fees. *Scott Co. of California v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999). The fact
22 that a plaintiff recovers less than the full amount sought is not by itself determinative. *Buck*
23 *v. Barb*, 147 Cal. App. 3d 920, 926 (Cal. App. 1 Dist. 1983) ("The fact that a party's recovery
24 in an action under a contract is less than the amount he prayed for does not make his
25 adversary the prevailing party within the meaning of Civil Code section 1717."); 
26 *Sukut-Coulson, Inc. v. Allied Canon Co.*, 85 Cal. App. 3d 648, 656 (Cal. App. 2 Dist. 1978)
27 (holding that defendants "are not prevailing parties within the meaning of Civil Code section
28 1717 merely because the plaintiff's recovery did not correspond to its wildest dreams.")

1    A recent decision by the California Court of Appeal illustrates why Defendants'
2    analysis is too simplistic, and why the Court cannot decide the issue based solely on
3    arithmetic. In *De La Cuesta v. Benham*, 193 Cal. App. 4th 1287 (Cal. App. 4 Dist. 2011), the
4    California Court of Appeal cited and discussed relevant caselaw at length, including cases
5    Defendants rely on. *De La Cuesta* makes clear that a trial court should consider the results
6    obtained relative to the results sought, but must bear in mind equitable principles and the
7    facts of the case. *De La Cuesta* also makes clear that cases where the results are mixed
8    remain an open question. *Id*. at 1293 (noting that *Hsu v. Abbara*, 9 Cal.4th 863 (1995) left
9    open the question of what would differentiate between an unqualified win for one party and
10   a truly split decision that would leave no prevailing party).

11   In *De La Cuesta*, a landlord sued a tenant for unpaid rent of a commercial property,
12   and requested $103,000 in damages. The tenant asserted what the court called an "extreme
13   position that she owed *nothing* by way of back rent because of . . . water and sewage
14   leaks . . . ." *Id*. at 1296. The landlord prevailed, and obtained $70,000 in damages. The trial
15   court held that there was no prevailing party, but this was reversed on appeal as an abuse
16   of discretion. The appellate court considered not only the landlord's claim, but the tenant's
17   own affirmative case, and found that the landlord got most of what he sought (about 70%,
18   while the tenant got zero percent. *Id*. The tenant did not simply resist the landlord's claims;
19   she actively presented her own case, attempting to argue that the property she had rented
20   had no value at all. *Id*. at 1290–91.  The court characterized the judgment of $70,000 against
21   her as a "zero percent" win for her, whereas the landlord got an approximately 70 percent
22   win. *Id*. at 1296. This is not an isolated holding. In *Brittalia Ventures v. Stuke Nursery
23   Co.,Inc.*, 153 Cal. App. 4th 17, 29 (Cal. App. 3 Dist. 2007), the appellate court pointed out
24   that contractual attorney's fees provisions are properly seen as bilateral, and that a party
25   who successfully resists a contract claim by establishing the contract's invalidity or
26   unenforceability becomes the prevailing party under § 1717. In other words, the tenant in *De
27   La Cuesta* obtained a "zero percent" win on her argument that the rental contract was
28   unenforceable, an argument that, had she won, could have entitled her to attorney's fees.

1    *De La Cuesta* discusses the necessity of "*some* sort of comparison of respective

2    results" but avoids making it a purely arithmetical comparison. *See id.* at 1295.  In other

3    words, the court could simply have said that because the landlord got more than half of what

4    he sought, he was *ipso facto* the prevailing party. It did not so hold. Instead, the court

5    discussed the realities of litigation, including the fact that attorneys' professional

6    responsibilities to their clients generally cause them to err in overstating the extent of their

7    claims. *Id*. The court avoided fashioning a "one-size-fits all rule" that failed to take into

8    account the totality of the case. *Id*.

9         This case is much like *De La Cuesta* in the sense that Defendants vigorously argued

10   that Hubbard ought to be paid nothing at all. They unsuccessfully attempted to prove that

11   the consulting agreement had never been amended to reflect his higher rate of pay, that he

12   breached the consulting agreement by his incompetence or malfeasance, and that they

13   should be entitled to offset his past unpaid consulting fees with his future earnings at Sizzler.

14   Instead of the finding of no liability or award of no damages they sought, a judgment of

15   $41,666.65 was entered against them. That is the type of award the *De La Cuesta* court

16   referred to as a "zero percent" win.

17        Hubbard, by comparison, won a fairly small award in comparison with his request, but

18   the reduction was the result of his loss on two issues, namely, whether the entire amount

19   under the agreement became due as soon as Phil's breached, or if not, whether his new job

20   with Sizzler ended the possibility of his working for Phil's. Hubbard's loss on these issues

21   was not absolute. The Court found, for example, that Hubbard's agreement with Phil's was

22   non-exclusive and that he could have worked on the side for a restaurant such as Sizzler;

23   the limiting factor was the time the Sizzler job required, and not the nature of the work or the

24   contractual terms as Defendants suggested. (Docket no.  181 at 3:15–19, 4:14–19.)

25   Hubbard's win of just under seventeen percent of his request is therefore merely the product

26   of Hubbard asserting maximum claims. *See De La Cuesta*, 193 Cal. App. 4th at 1296 n.5

27   (characterizing the dilemma of plaintiffs' counsel: "Risk a malpractice suit by *not* asserting

28   / / /

1  maximal claims, or risk a malpractice suit by forfeiting 'prevailing party' status under section

2  1717 *by* asserting maximal claims.")

3       The Court does not simply count claims or calculate the ratio of money damages

4  awarded versus money damages sought. *See De La Cuesta*, 193 Cal. App. 4th at 1299

5  (citing *Silver Creek, LLC v. Blackrock Realty Advisors, Inc.*, 173 Cal. App. 4th 1533, 1540

6  (Cal. App. 4 Dist. 2009)) (trial court erred by merely counting claims); *Ajaxo, Inc. v. E*Trade

7  Group, Inc.* 135 Cal. App. 4th 21 (Cal. App. 6 Dist. 2005) (party that won on issue of

8  contractual liability but obtained less than ten percent of the damages it claimed was the

9  prevailing party).  Rather, viewing the parties' objectives and positions and the litigation as

10  a whole, the Court exercises its "broad discretion," *see Silver Creek* at 1541, and reaffirms

11  its earlier determination that Hubbard is the prevailing party on his claims under the

12  consulting agreement, and is entitled to an award of costs and fees.

13       Having rejected most of Defendants' arguments in opposition to Hubbard's fee

14  request, the Court turns to the amount.

15                **How Much Hubbard Is Entitled to in Attorney's Fees and Costs**

16       That portion of the Court's findings of fact and conclusions of law that addressed

17  attorney's fees and costs directed the parties' attention to the amount involved. Hubbard has

18  briefed the issue in detail, and requests $205,153 in fees plus $12,714.26 in costs. This

19  represents over five times the amount he recovered on his consulting agreement claim. Of

20  course, he obtained more than this in the litigation as a whole, but the only claims for which

21  he is entitled to fees are those brought pursuant to the consulting agreement.

22       Hubbard's briefing shows that he made a thorough attempt to differentiate between

23  fees attributable to the consulting agreement claims, and fees attributable to the rest of the

24  litigation. He admits, however, that there is no neat and easy way to separate out fees, a

25  problem that has troubled courts before. *See Buena Vista, LLC v. New Resource Bank*,

26  2011 WL 3794904, *4 (N.D.Cal. 2011) (citing *Reynolds Metals Co. v. Alperson*, 25 Cal.3d

27  124, 129 (1979) and *Abdallah v. U.S. Savings Bank*, 43 Cal. App. 4th 1101, 1111 (Cal. App.

28  1 Dist. 1996)).  In such situations, apportionment of the fees is committed to the trial court's

1    sound discretion. *Id*. Where legal work pertains both to claims for which fees are proper and

2    claims for which they are not allowed, a court need not apportion the fees, but may treat

3    them as attributable to the claims for which fees are allowed. *Id*. This avoids punishing a

4    plaintiff for joining other claims, and diluting the plaintiff's right to fees. *Id*.

5        Under California law, the lodestar method is normally used to calculate reasonable

6    fees under § 1717. *See PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095–96 (2000). This

7    begins with a calculation of a reasonable number of hours expended times a reasonable rate

8    for the market. *Id*. at 1096. The Court may adjust this figure up or down, in order to fix the

9    fair market value for the legal services provided, based on factors such as the nature and

10   difficulty of the litigation, the amount at stake, the skill required and used, the attention given

11   to the case, and the degree of success obtained. *Id*. at 1095–96. The determination of a

12   reasonable rate may be based on such factors as the skill and experience of the attorneys,

13   the nature of the work they performed, their expertise, their customary billing rates, and the

14   prevailing rates charged by attorneys of comparable skill and experience in the community

15   while performing similar work. *See Flannery v. California Highway Patrol*, 61 Cal. App. 4th

16   629, 632–33 (Cal. App. 1 Dist. 1998).   The Court is afforded discretion in making this

17   determination, *PLCM*, 22 Cal. 4th at 1096, and is not required to become "enmeshed in a

18   meticulous analysis of every detailed facet of the professional representation." *Id*. at 1098

19   (quoting *Serrano v. Unruh*, 32 Cal.3d 621, 642 (1982)).

20       Both parties' briefing discusses the litigation history, but Hubbard's understandably

21   is able to add information about changes in his counsel and what they were doing at various

22   stages of litigation. As the party seeking the fee award, it is Hubbard's burden to show that

23   the fees he seeks are reasonable. *See Ajaxo*, 135 Cal. App. 4th at 65. Toward this end, his

24   briefing discusses the relationship between earlier stages of the litigation and his claims

25   under the consulting agreement.  He has documented the amount his attorneys charged,

26   explained what they were doing and what efforts they took to make sure they were not

27   overbilling, and has supported his arguments with declarations and extensive billing records.

28   / / /

1    Defendants don't dispute the claimed hourly rates. Rather, they argue that not all of

2    the hours pertained to the consulting agreement claim, that some of the hours are block-

3    billed, and that the amount should be adjusted downward.

4    The argument about block billing is limited to a single sentence asserting simply that

5    large portions of Robert McGaughey's billings are block billings. (Docket no. 188, 12:23–24.)

6    Defendants then assert that it is impossible to determine whether the other billings are block

7    billed. In order for the Court to accept these objections as valid, it would need to review the

8    records, identify troublesome billing entries, and make Defendants' arguments about

9    particular entries or groups of entries for them. The Court is not prepared to do that, and

10   therefore considers these objections inadequately raised. *See Brooks v. Gomez*, 2013 WL

11   496339 at *7 (N.D.Cal., Feb. 7, 2013) (citing *Indep. Towers of Wash. v. Wash.*, 350 F.3d

12   925, 929 (9th Cir. 2003)) (declining to consider overly brief, unsupported and inadequately

13   explained argument).

14   Defendants argue, in greater detail, that not all of the claimed hours or expenses

15   pertain to the consulting agreement claim. They support their argument by pointing out that

16   some work was done in earlier stages of the litigation. As Hubbard's brief explains, however,

17   this is not necessarily a problem for him, because work pertaining to multiple aspects of the

18   litigation need not be apportioned. The same is true for expenses, such as deposition

19   transcripts. It is common for early factual and legal research, discovery, client

20   communications, organization, and other common tasks and analysis to be put to use at

21   multiple points in the litigation process, and Hubbard argues this was what happened. (*See,*

22   *e.g.*, Decl. of Daniel Benjamin in Support of Fee Mot., ¶ 3 (discussing how issues related to

23   valuation and the shareholder agreement overlapped with consulting agreement claims).)

24   Defendants object that much of Robert McGaughey's billed work was done during the

25   valuation phase of this litigation (when Phil's was being valued so that Hubbard's shares

26   could be purchased) and that this must have been irrelevant to the consulting agreement

27   claim. But Hubbard is correct that there was a good deal of overlap between the various

28   parts of this case. Preparing for and attending depositions of party opponents, even if done

1   in preparation for the valuation hearing, would have provided needed background for the

2   case. Had this phase of the case never happened, Hubbard's counsel likely would have had

3   to do the work again later. (*See* McGaughey Decl. in Support of Fee Mot., ¶ 7 ("[T]he

4   depositions conducted during the appraisal phase were used in preparation for and during

5   the trial on the breach of Consulting Agreement claim.")) Without a more specific argument

6   or some evidence from Defendants, there is no reason to disbelieve the declarations

7   Hubbard offers. It would be a problem if the work were done or expenses incurred <u>after</u>

8   Hubbard had established his contract claim, but here, the reverse happened.

9        Finally, Defendants argue that the lodestar figure should be reduced because the

10  litigation was straightforward and required little expertise, because Hubbard knew all along

11  he was not entitled to be paid under the consulting agreement once he had started working

12  for Sizzler, and because he recovered less than 17% of the amount he requested. The Court

13  is of course familiar with this case, and disagrees that it was easy or required little effort or

14  expertise. The issues were heavily argued and briefed, many of the issues were subtle, and

15  a good deal of expertise was required. Had Hubbard's counsel been less able, they would

16  not have prevailed on their motion for reconsideration, nor recovered any money at all on the

17  consulting agreement claim.

18       With regard to the claim that Hubbard knew he was never entitled to the full $250,000,

19  this was not obvious at all. Defendants reiterate their arguments from earlier in the litigation

20  that this would have been a windfall to him. But the fact is, they breached the consulting

21  agreement by stopping his pay, even while accepting his work. Had Hubbard been unable

22  to find new employment at all, they certainly would have been on the hook for the full

23  $250,000. And had he found work that he could have done while still working for Phil's,

24  Defendants would still have been on the hook for the full amount. (*See* Docket no. 181 at

25  4:17–19.) The issue here was whether, regardless of what he actually did, Hubbard could

26  have worked for Sizzler while working for Phil's, at least through the end of the consulting

27  agreement's term. This called for a determination, not of what happened, but what was

28  / / /

1   possible, something Hubbard might not have known. While the evidence favored
2   Defendants, it was not overwhelming.

3   Thus, as far as Hubbard was concerned, therefore, the entire $250,000 was in play.
4   While not a part of his contract claim, Hubbard was also entitled to prejudgment interest of
5   10%. The availability of interest also supports the reasonableness of his decision to litigate.

6   Defendants do not argue that the recovery represents only limited success; rather,
7   they argue it can be characterized only as a complete failure to achieve his objective of
8   recovering $250,000. The Court disagrees. Hubbard's objective was to recover money owed
9   to him for work he did, and in that he succeeded. He didn't recover the full amount, but he
10  did get paid for the work he actually did. In so doing, he succeeded on most issues he
11  raised.  And, as discussed above, fees are not capped at the actual recovery amount, so
12  Hubbard can recover more in reasonable attorney's fees and costs, even several times
13  more.

14  In conclusion, the Court finds Hubbard has substantiated his claims for attorney's fees
15  and costs. While the amount he requests seems high, even in comparison to the $250,000
16  he requested, it is not unreasonably so.

17  **Conclusion and Order**

18  For the reasons set forth above, the Court **AWARDS** Hubbard $205,153 in attorney's
19  fees plus $12,714.26 in costs with regard to his consulting agreement claim in this case.

20

21  **IT IS SO ORDERED**.

22  DATED:  June 20, 2013

23

24  **HONORABLE LARRY ALAN BURNS**
    United States District Judge

25

26

27

28