**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| THOMAS HUBBARD, | CASE NO. 09CV0735-LAB (KSC) |
|---|---|
| Plaintiff, | **ORDER AWARDING COSTS AND ATTORNEY'S FEES** |
| vs. | |
| PHIL'S BBQ OF POINT LOMA, INC., a California corporation; PHILLIP C. PACE and JEFFREY A. LOYA, | |
| Defendants. | |

  This case originally raised several business disputes governed by California law. The Court, sitting in diversity, adjudicated most of those disputes. After denying summary judgment on Plaintiff Thomas Hubbard's claim that he was improperly denied compensation under the parties' consulting agreement, the court held a bench trial on that sole issue.

  Hubbard took the position that the consulting agreement had been amended to raise his monthly pay, but Defendants breached the agreement when they stopped paying him in November of 2008. He argued that the consulting agreement was amended to take into account additional work he was required to do for Phil's BBQ of Point Loma ("Phil's"). He brought a claim seeking the money he believed he was entitled to for the rest of the term of the amended consulting agreement. Defendants took the position that the consulting agreement had never been amended, or that if it had, Hubbard had breached it by failing to

perform his duties adequately, by taking a job with another company (Sizzler), and by filing suit. Defendants argued that the amount Hubbard later earned at Sizzler should be applied retroactively to any obligation they might have to pay him. Because, in the long term, he earned more at Sizzler than he would have earned if he had remained employed at Phil's, this would have the effect of wiping out their obligation to pay him anything. Hubbard, for his part, argued that the entire amount owed to him under the consulting agreement became due when Phil's breached by ceasing to pay him even though he continued to work there. He also argued he could have done consulting work for both Phil's and Sizzler at the same time, and that the money Sizzler paid him should therefore not be treated as mitigating damages.

In his amended complaint, Hubbard requested costs and attorney's fees, which the consulting agreement provided for. In his trial brief, Hubbard again asserted that he was entitled to fees under the consulting agreement. (Pl.'s Trial Br. (Docket no. 156) at 2 n.1.) He did not at that time ask for an award of fees, but said he would apply for them after trial. (*Id.*) At trial, he again argued he was entitled to costs and attorney's fees under the consulting agreement.

After hearing all the evidence, the court announced its findings from the bench, which it confirmed and supplemented in written findings of fact and conclusions of law. (Docket no. 181.) The Court found that the consulting agreement had been amended, that Hubbard had adequately performed under it and had not breached it, and that he was entitled to be paid.

As part of its findings, the Court determined that Hubbard was the prevailing party for purposes of costs and fees under the consulting agreement, and ordered briefing on the issue. The parties both filed briefs as ordered. Hubbard's brief, as expected, focused on the amounts he believed he was entitled to. Defendants' brief, however, focused primarily on whether Hubbard was entitled to costs and fees at all. The body of their brief is thirteen pages long, of which only four are devoted to the proper amount of fees. Of those four pages, three are devoted to a lodestar analysis, and there is only about one page of objections to hours billed and claimed.

**Whether Hubbard is Entitled to an Award of Costs and Fees**

The parties agree that the consulting agreement contains an attorney's fees provision, and Defendants' brief attaches a copy of the consulting agreement. Paragraph 11(e) on page 9 of that agreement provides:

> In any dispute or controversy arising under, or in connection with, the Agreement the prevailing party shall, in addition to other relief, be entitled to an award of reasonable attorneys' fees and costs incurred in connection with any dispute under the Agreement, including the costs and fees of expert witnesses and/or consultants.

Because the Court is sitting in diversity, it applies California substantive law and federal procedural law. *See Zamani v. Carnes*, 491 F.3d 990 The parties agree that California Civil Code § 1717 governs the award of attorney's fees where, as here, the contract provides for them. Under § 1717(a), the "party who is determined to be the party prevailing on the contract" is entitled to reasonable attorney's fees as well as other costs.

Defendants first argue that the request for fees is premature and procedurally defective. In support of this, they cite § 1717(b)(10, which says that when a party files a noticed motion, the court is to determine which party is the prevailing party for purposes of this provision. On this sole basis they assert that Hubbard's request for fees is premature. This is wrong for several reasons. First, it was the Court, not Hubbard, that found Hubbard to be the prevailing party and ordered briefing. Hubbard did not err by following the Court's order. Second, Defendants are asking for reconsideration of the Court's determination, but they haven't met any of the requirements for doing so. *See* this Chambers' Standing Order, ¶ 4(j); compare Order of December 20, 2012 (noting that question of reconsideration had been raised at trial, and setting briefing schedule). In fact, they raised this issue for the first time in their opposition to the request for attorney's fees.

Third, as noted above, the Court applies federal procedural law, not California law such as § 1717(b)(1)'s noticed motion requirement. Defendants haven't cited any federal rule or requirement that would have required the Court to adjudicate the issue using the procedure they now urge. In the absence of such a rule, the Court is empowered to regulate
/ / /

proceedings so as to do justice while avoiding unnecessary delay and expense. *See* Fed. R. Civ. P. 1 and 83(b).

Defendants go on to give the Court reasons why it erred by finding that Hubbard was the prevailing party. These reasons, in fact, account for the largest part of Defendants' argument. If the Court found any of these arguments persuasive, it would have given Hubbard an opportunity to respond. Because they are not persuasive, Hubbard need not file any opposition to them.

Defendants' argument is based solely on the amount he requested in damages, and the amount he was awarded. He sought payment for the remainder of the contract period under the consulting agreement, under the theory that he could have worked both for Sizzler and for Phil's. Because the Court found he could not have worked for both, his damages were cut off as of the date he began working for Sizzler, because he successfully mitigated, as he was required to do. Instead of being awarded the $250,000 he requested, this one finding resulted in his damages being reduced to $41,666.65 (not counting prejudgment interest). Defendants argue that because Hubbard received less than 17% of the amount he sought under the consulting agreement, he was not the prevailing party. Defendants argue instead that they were the prevailing party or, alternatively, that there was no prevailing party, because they and not Hubbard obtained the greater relief under the contract.

Where, as here, neither party achieves a complete victory, it is within the trial court's discretion to determine which party (if any) prevailed sufficiently to justify an award of attorney's fees. *Scott Co. of California v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999). The fact that a plaintiff recovers less than the full amount sought is not by itself determinative. *Buck v. Barb*, 147 Cal. App. 3d 920, 926 (Cal. App. 1 Dist. 1983) ("The fact that a party's recovery in an action under a contract is less than the amount he prayed for does not make his adversary the prevailing party within the meaning of Civil Code section 1717."); *Sukut-Coulson, Inc. v. Allied Canon Co.*, 85 Cal. App. 3d 648, 656 (Cal. App. 2 Dist. 1978) (holding that defendants "are not prevailing parties within the meaning of Civil Code section 1717 merely because the plaintiff's recovery did not correspond to its wildest dreams.")

A recent decision by the California Court of Appeal illustrates why Defendants' analysis is too simplistic, and why the Court cannot decide the issue based solely on arithmetic. In *De La Cuesta v. Benham*, 193 Cal. App. 4th 1287 (Cal. App. 4 Dist. 2011), the California Court of Appeal cited and discussed relevant caselaw at length, including cases Defendants rely on. *De La Cuesta* makes clear that a trial court should consider the results obtained relative to the results sought, but must bear in mind equitable principles and the facts of the case. *De La Cuesta* also makes clear that cases where the results are mixed remain an open question. *Id*. at 1293 (noting that *Hsu v. Abbara*, 9 Cal.4th 863 (1995) left open the question of what would differentiate between an unqualified win for one party and a truly split decision that would leave no prevailing party).

In *De La Cuesta*, a landlord sued a tenant for unpaid rent of a commercial property, and requested $103,000 in damages. The tenant asserted what the court called an "extreme position that she owed *nothing* by way of back rent because of . . . water and sewage leaks . . . ." *Id*. at 1296. The landlord prevailed, and obtained $70,000 in damages. The trial court held that there was no prevailing party, but this was reversed on appeal as an abuse of discretion. The appellate court considered not only the landlord's claim, but the tenant's own affirmative case, and found that the landlord got most of what he sought (about 70%, while the tenant got zero percent. *Id*. The tenant did not simply resist the landlord's claims; she actively presented her own case, attempting to argue that the property she had rented had no value at all. *Id*. at 1290–91. The court characterized the judgment of $70,000 against her as a "zero percent" win for her, whereas the landlord got an approximately 70 percent win. *Id*. at 1296. This is not an isolated holding. In *Brittalia Ventures v. Stuke Nursery Co.,Inc.*, 153 Cal. App. 4th 17, 29 (Cal. App. 3 Dist. 2007), the appellate court pointed out that contractual attorney's fees provisions are properly seen as bilateral, and that a party who successfully resists a contract claim by establishing the contract's invalidity or unenforceability becomes the prevailing party under § 1717. In other words, the tenant in *De La Cuesta* obtained a "zero percent" win on her argument that the rental contract was unenforceable, an argument that, had she won, could have entitled her to attorney's fees.

*De La Cuesta* discusses the necessity of "*some* sort of comparison of respective results" but avoids making it a purely arithmetical comparison. *See id.* at 1295. In other words, the court could simply have said that because the landlord got more than half of what he sought, he was *ipso facto* the prevailing party. It did not so hold. Instead, the court discussed the realities of litigation, including the fact that attorneys' professional responsibilities to their clients generally cause them to err in overstating the extent of their claims. *Id*. The court avoided fashioning a "one-size-fits all rule" that failed to take into account the totality of the case. *Id*.

This case is much like *De La Cuesta* in the sense that Defendants vigorously argued that Hubbard ought to be paid nothing at all. They unsuccessfully attempted to prove that the consulting agreement had never been amended to reflect his higher rate of pay, that he breached the consulting agreement by his incompetence or malfeasance, and that they should be entitled to offset his past unpaid consulting fees with his future earnings at Sizzler. Instead of the finding of no liability or award of no damages they sought, a judgment of $41,666.65 was entered against them. That is the type of award the *De La Cuesta* court referred to as a "zero percent" win.

Hubbard, by comparison, won a fairly small award in comparison with his request, but the reduction was the result of his loss on two issues, namely, whether the entire amount under the agreement became due as soon as Phil's breached, or if not, whether his new job with Sizzler ended the possibility of his working for Phil's. Hubbard's loss on these issues was not absolute. The Court found, for example, that Hubbard's agreement with Phil's was non-exclusive and that he could have worked on the side for a restaurant such as Sizzler; the limiting factor was the time the Sizzler job required, and not the nature of the work or the contractual terms as Defendants suggested. (Docket no. 181 at 3:15–19, 4:14–19.) Hubbard's win of just under seventeen percent of his request is therefore merely the product of Hubbard asserting maximum claims. *See De La Cuesta*, 193 Cal. App. 4th at 1296 n.5 (characterizing the dilemma of plaintiffs' counsel: "Risk a malpractice suit by *not* asserting

/ / /

maximal claims, or risk a malpractice suit by forfeiting 'prevailing party' status under section 1717 *by* asserting maximal claims.")

The Court does not simply count claims or calculate the ratio of money damages awarded versus money damages sought. *See De La Cuesta*, 193 Cal. App. 4th at 1299 (citing *Silver Creek, LLC v. Blackrock Realty Advisors, Inc.*, 173 Cal. App. 4th 1533, 1540 (Cal. App. 4 Dist. 2009)) (trial court erred by merely counting claims); *Ajaxo, Inc. v. E*Trade Group, Inc.* 135 Cal. App. 4th 21 (Cal. App. 6 Dist. 2005) (party that won on issue of contractual liability but obtained less than ten percent of the damages it claimed was the prevailing party). Rather, viewing the parties' objectives and positions and the litigation as a whole, the Court exercises its "broad discretion," *see Silver Creek* at 1541, and reaffirms its earlier determination that Hubbard is the prevailing party on his claims under the consulting agreement, and is entitled to an award of costs and fees.

Having rejected most of Defendants' arguments in opposition to Hubbard's fee request, the Court turns to the amount.

**How Much Hubbard Is Entitled to in Attorney's Fees and Costs**

That portion of the Court's findings of fact and conclusions of law that addressed attorney's fees and costs directed the parties' attention to the amount involved. Hubbard has briefed the issue in detail, and requests $205,153 in fees plus $12,714.26 in costs. This represents over five times the amount he recovered on his consulting agreement claim. Of course, he obtained more than this in the litigation as a whole, but the only claims for which he is entitled to fees are those brought pursuant to the consulting agreement.

Hubbard's briefing shows that he made a thorough attempt to differentiate between fees attributable to the consulting agreement claims, and fees attributable to the rest of the litigation. He admits, however, that there is no neat and easy way to separate out fees, a problem that has troubled courts before. *See Buena Vista, LLC v. New Resource Bank*, 2011 WL 3794904, *4 (N.D.Cal. 2011) (citing *Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 129 (1979) and *Abdallah v. U.S. Savings Bank*, 43 Cal. App. 4th 1101, 1111 (Cal. App. 1 Dist. 1996)). In such situations, apportionment of the fees is committed to the trial court's

sound discretion. *Id*. Where legal work pertains both to claims for which fees are proper and claims for which they are not allowed, a court need not apportion the fees, but may treat them as attributable to the claims for which fees are allowed. *Id*. This avoids punishing a plaintiff for joining other claims, and diluting the plaintiff's right to fees. *Id*.

Under California law, the lodestar method is normally used to calculate reasonable fees under § 1717. *See PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095–96 (2000). This begins with a calculation of a reasonable number of hours expended times a reasonable rate for the market. *Id*. at 1096. The Court may adjust this figure up or down, in order to fix the fair market value for the legal services provided, based on factors such as the nature and difficulty of the litigation, the amount at stake, the skill required and used, the attention given to the case, and the degree of success obtained. *Id*. at 1095–96. The determination of a reasonable rate may be based on such factors as the skill and experience of the attorneys, the nature of the work they performed, their expertise, their customary billing rates, and the prevailing rates charged by attorneys of comparable skill and experience in the community while performing similar work. *See Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 632–33 (Cal. App. 1 Dist. 1998). The Court is afforded discretion in making this determination, *PLCM*, 22 Cal. 4th at 1096, and is not required to become "enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Id*. at 1098 (quoting *Serrano v. Unruh*, 32 Cal.3d 621, 642 (1982)).

Both parties' briefing discusses the litigation history, but Hubbard's understandably is able to add information about changes in his counsel and what they were doing at various stages of litigation. As the party seeking the fee award, it is Hubbard's burden to show that the fees he seeks are reasonable. *See Ajaxo*, 135 Cal. App. 4th at 65. Toward this end, his briefing discusses the relationship between earlier stages of the litigation and his claims under the consulting agreement. He has documented the amount his attorneys charged, explained what they were doing and what efforts they took to make sure they were not overbilling, and has supported his arguments with declarations and extensive billing records.
/ / /

Defendants don't dispute the claimed hourly rates. Rather, they argue that not all of the hours pertained to the consulting agreement claim, that some of the hours are block-billed, and that the amount should be adjusted downward.

The argument about block billing is limited to a single sentence asserting simply that large portions of Robert McGaughey's billings are block billings. (Docket no. 188, 12:23–24.) Defendants then assert that it is impossible to determine whether the other billings are block billed. In order for the Court to accept these objections as valid, it would need to review the records, identify troublesome billing entries, and make Defendants' arguments about particular entries or groups of entries for them. The Court is not prepared to do that, and therefore considers these objections inadequately raised. *See Brooks v. Gomez*, 2013 WL 496339 at *7 (N.D.Cal., Feb. 7, 2013) (citing *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003)) (declining to consider overly brief, unsupported and inadequately explained argument).

Defendants argue, in greater detail, that not all of the claimed hours or expenses pertain to the consulting agreement claim. They support their argument by pointing out that some work was done in earlier stages of the litigation. As Hubbard's brief explains, however, this is not necessarily a problem for him, because work pertaining to multiple aspects of the litigation need not be apportioned. The same is true for expenses, such as deposition transcripts. It is common for early factual and legal research, discovery, client communications, organization, and other common tasks and analysis to be put to use at multiple points in the litigation process, and Hubbard argues this was what happened. (*See, e.g.*, Decl. of Daniel Benjamin in Support of Fee Mot., ¶ 3 (discussing how issues related to valuation and the shareholder agreement overlapped with consulting agreement claims).)

Defendants object that much of Robert McGaughey's billed work was done during the valuation phase of this litigation (when Phil's was being valued so that Hubbard's shares could be purchased) and that this must have been irrelevant to the consulting agreement claim. But Hubbard is correct that there was a good deal of overlap between the various parts of this case. Preparing for and attending depositions of party opponents, even if done

in preparation for the valuation hearing, would have provided needed background for the case. Had this phase of the case never happened, Hubbard's counsel likely would have had to do the work again later. (*See* McGaughey Decl. in Support of Fee Mot., ¶ 7 ("[T]he depositions conducted during the appraisal phase were used in preparation for and during the trial on the breach of Consulting Agreement claim.")) Without a more specific argument or some evidence from Defendants, there is no reason to disbelieve the declarations Hubbard offers. It would be a problem if the work were done or expenses incurred <u>after</u> Hubbard had established his contract claim, but here, the reverse happened.

Finally, Defendants argue that the lodestar figure should be reduced because the litigation was straightforward and required little expertise, because Hubbard knew all along he was not entitled to be paid under the consulting agreement once he had started working for Sizzler, and because he recovered less than 17% of the amount he requested. The Court is of course familiar with this case, and disagrees that it was easy or required little effort or expertise. The issues were heavily argued and briefed, many of the issues were subtle, and a good deal of expertise was required. Had Hubbard's counsel been less able, they would not have prevailed on their motion for reconsideration, nor recovered any money at all on the consulting agreement claim.

With regard to the claim that Hubbard knew he was never entitled to the full $250,000, this was not obvious at all. Defendants reiterate their arguments from earlier in the litigation that this would have been a windfall to him. But the fact is, they breached the consulting agreement by stopping his pay, even while accepting his work. Had Hubbard been unable to find new employment at all, they certainly would have been on the hook for the full $250,000. And had he found work that he could have done while still working for Phil's, Defendants would still have been on the hook for the full amount. (*See* Docket no. 181 at 4:17–19.) The issue here was whether, regardless of what he actually did, Hubbard could have worked for Sizzler while working for Phil's, at least through the end of the consulting agreement's term. This called for a determination, not of what happened, but what was

/ / /

possible, something Hubbard might not have known. While the evidence favored Defendants, it was not overwhelming.

Thus, as far as Hubbard was concerned, therefore, the entire $250,000 was in play. While not a part of his contract claim, Hubbard was also entitled to prejudgment interest of 10%. The availability of interest also supports the reasonableness of his decision to litigate.

Defendants do not argue that the recovery represents only limited success; rather, they argue it can be characterized only as a complete failure to achieve his objective of recovering $250,000. The Court disagrees. Hubbard's objective was to recover money owed to him for work he did, and in that he succeeded. He didn't recover the full amount, but he did get paid for the work he actually did. In so doing, he succeeded on most issues he raised. And, as discussed above, fees are not capped at the actual recovery amount, so Hubbard can recover more in reasonable attorney's fees and costs, even several times more.

In conclusion, the Court finds Hubbard has substantiated his claims for attorney's fees and costs. While the amount he requests seems high, even in comparison to the $250,000 he requested, it is not unreasonably so.

**Conclusion and Order**

For the reasons set forth above, the Court **AWARDS** Hubbard $205,153 in attorney's fees plus $12,714.26 in costs with regard to his consulting agreement claim in this case.

**IT IS SO ORDERED**.

DATED: June 20, 2013

**HONORABLE LARRY ALAN BURNS**
United States District Judge